13 F.3d 405
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Idonna JOHNSON, (Widow of Verl Johnson), Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR,
and
Rosebud Coal Sales Company, Respondents.
 No. 92-9518.
 United States Court of Appeals, Tenth Circuit.
 Nov. 19, 1993.
 
 1
 Before SEYMOUR and KELLY, Circuit Judges, and LEONARD,* District Judge.
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 LEONARD, District Judge.
 
 
 4
 This appeal seeks review of a denied claim for Black Lung benefits filed under the provisions of the Black Lung Benefits Act.[1] Upon review of the record, the Court focuses on the issue of whether notice of Dr. Sullivan's report was given to Petitioner pursuant to the regulations. The Court finds that notice was not given pursuant to the regulations and that the Administrative Law Judge (ALJ) and the Benefits Review Board (BRB) erred by allowing the medical report of Dr. Sullivan to be admitted into evidence. We find that the error warrants reversal of the denial of benefits in favor of an award.
 
 BACKGROUND
 
 5
 Verl Johnson, a 27 year veteran of the coal mines, filed an initial claim for benefits on August 9, 1977. On April 2, 1979, the Department of Labor issued its initial denial of the claim, based on the absence of evidence establishing that Mr. Johnson was totally disabled by pneumoconiosis. On April 30, 1979, Mr. Johnson submitted a report by Dr. Darryl Bindschadler which included objective test results meeting the criteria to invoke a presumption of total disability due to pneumoconiosis. On September 5, 1979, the Claims Examiner notified Verl Johnson that medical evidence supported his claim for Black Lung benefits. A copy of this notification was sent to the operator, Rosebud Coal Sales Company (Rosebud). On September 12, 1979, the operator filed a controversion of liability. On October 23, 1979, in accordance with 20 C.F.R. Sec. 725.414(a), Dr. Bernard Sullivan, Rosebud's doctor, examined Verl Johnson.
 
 
 6
 On October 31, 1979, a copy of Dr. Sullivan's report was sent to the Department of Labor by Rosebud's attorney. There was no evidence that Dr. Sullivan's report was sent to Verl Johnson. On November 7, 1979, the Department of Labor informally approved Mr. Johnson's claim. Rosebud requested a hearing before the Office of Administrative Law Judges. On January 8, 1980, the Claims Examiner notified Mr. Johnson that payment would be made from the Black Lung Disability Fund because the operator had controverted his claim.
 
 
 7
 On March 6, 1980, the Deputy Commissioner issued Form CM-1025, referring the case for a hearing. This form purported to transmit all evidence contained in the file which had not been previously been sent to the parties. On May 13, 1980, Verl Johnson died before his administrative hearing could be convened.
 
 
 8
 On January 17, 1981, Mrs. Idonna Johnson filed an application for survivor's benefits. On August 18, 1982, a hearing was convened before an Administrative Law Judge. At that hearing, the ALJ admitted Dr. Sullivan's report and testimony over the objection of Mrs. Johnson's counsel. The ALJ stated his reasons as follows:
 
 
 9
 I overruled Claimant's motion to exclude Dr. Sullivan's report and testimony but permitted the introduction of additional evidence as permitted by 20 C.F.R. Sec. 725.414(c). The net result was that the Claimant withdrew their objections to Dr. Sullivan's report. Claimant, moreover was given an opportunity to develop additional medical (rebuttal) evidence if desired but declined to do so even though the record was held open thirty days. (T-20).
 
 
 10
 As pointed out by Employer, the examination by Dr. Sullivan was no surprise since, obviously, Claimant was well aware of his own examination. He should have told his attorneys.
 
 
 11
 In all candor, while Employer definitely should have submitted Dr. Sullivan's report to Claimant back in 1979, Claimant's very late (at the hearing) objection to the report can only be described as a technical objection with no substantive merits. At the very least I find that extraordinary circumstances exist to permit introduction of the document.
 
 
 12
 1987 Decision and Order by ALJ on Remand, pp. 5-6.
 
 DISCUSSION
 
 13
 The initial development of evidence in a claim under the Black Lung Benefits Act is governed by 20 C.F.R. Sec. 725 Subpart D. Sections 725.401-414 provide the mechanism by which all parties to a claim can submit evidence to the deputy commissioner of the Department of Labor.
 
 
 14
 The Claimant is initially provided by the Department of Labor with an opportunity to substantiate his or her claim with a medical examination. 20 C.F.R. Sec. 725.407. Based on this evidence, the deputy commissioner makes an initial finding. 20 C.F.R. Sec. 725.410. In this case, the Claimant was not entitled to benefits at the initial finding. The Claimant however is afforded an opportunity to submit additional evidence which was done in this case. The deputy commissioner may then issue additional findings. In this case, the deputy commissioner did issue additional findings which held that medical evidence supported Mr. Johnson's claim.
 
 
 15
 When medical evidence supports a claim, the potential responsible operator is notified. The operator may controvert liability. 20 C.F.R. Sec. 725.413. The operator may also develop its own evidence. 20 C.F.R. Sec. 725.414(a). The development of the operator's "rebuttal" evidence proceeds as follows:
 
 
 16
 (c) The report of any medical examination or test conducted under this section, or any other evidence submitted, shall be submitted to the deputy commissioner and sent to the other parties to the claim within the applicable period set forth in this section, unless the deputy commissioner enlarges such period for good cause shown or in the interest of justice.
 
 
 17
 (d) Upon receipt of a medical report obtained by an operator under this section, a claimant shall, upon request, be allowed a reasonable time, as determined by the deputy commissioner from the date on which the operator's report is received, to obtain additional evidence in support of the claim. Such evidence shall be obtained, submitted to the deputy commissioner, and exchanged with the other parties within the period allowed, unless the period is enlarged by the deputy commissioner for good cause shown. (Emphasis added.)
 
 
 18
 20 C.F.R. Sec. 725.414(c), (d).
 
 
 19
 After the development of evidence under the supervision of the deputy commissioner, the case is referred to the Office of Administrative Law Judges for a formal hearing at which the ALJ conducts a de novo inquiry into the claimant's entitlement. 20 C.F.R. Sec. 725.455.
 
 
 20
 Two regulations govern the ALJ's admission of that evidence which was developed while the case was pending before the deputy commissioner. Section 725.456(d) provides in pertinent part as follows:
 
 
 21
 Documentary evidence which is obtained by any party during the time a claim is pending before the deputy commissioner, and which is withheld by such party until the claim is forwarded to the Office of Administrative Law Judges shall, notwithstanding paragraph (b) of this section, not be admitted into the hearing record in the absence of extraordinary circumstances, unless such admission is requested by any other party to the claim.... (Emphasis added.)
 
 Section 725.414(e)(1) provides as follows:
 
 22
 Any documentary evidence obtained by a party during the time a claim is pending before a deputy commissioner, which is withheld from the deputy commissioner or any other party to the claim, shall not be admitted in any later proceedings held with respect to the claim in the absence of extraordinary circumstances, unless the admission of such evidence is requested by the Director or such other party. (Emphasis added.)
 
 
 23
 Upon review of the record, the Court finds no evidence to suggest that Dr. Sullivan's report was provided to Mr. Johnson within the applicable period. Rosebud asserts only that the Department of Labor received Dr. Sullivan's report. Rosebud argues that there was no surprise to the parties because the exhibit had been around for almost three years prior to the hearing. Rosebud observes that the Claimant certainly had knowledge of his own examination. See Transcript of Proceeding, August 18, 1982, pp. 11-12. Nowhere does Rosebud argue that Verl Johnson received the report as required by the regulations.
 
 
 24
 The effect of not receiving a medical report controverting liability in a timely fashion may be devastating to a claimant's case. The Court finds in this particular case that failure to send Dr. Sullivan's medical report to Claimant highly prejudiced Claimant's ability to develop evidence to support his claim.[2]
 
 
 25
 Because Mr. Johnson died without notice of the results of his examination by Rosebud's doctor, he was not afforded the opportunity to develop further evidence in support of his claim. It follows that Mrs. Johnson's claim for survivor's benefits is likewise prejudiced.
 
 
 26
 It was argued that the body of Verl Johnson could have been exhumed for evidence. Exhumation is onerous and the evidence obtained questionable. Under the circumstances, the Court will not place the burden on Mrs. Johnson to exhume her husband's body.
 
 
 27
 Rosebud suggests that because the Johnsons failed to show that their first attorney did not receive Dr. Sullivan's report, they should be charged with notice of the report. The Court finds that the burden of proof is not on the Claimant. Rather, the party mandated to give notice by regulation carries the burden of proof to show service by certificate of mailing or otherwise.
 
 
 28
 The ALJ made a finding of extraordinary circumstances to allow admission of the medical report. The ALJ did not state his reasons for making that finding. The Court has reviewed the record for extraordinary circumstances and finds none.
 
 
 29
 The ALJ also made a finding that the "net result" was that Claimant withdrew her objection to admission of the medical report.
 
 
 30
 The Court has reviewed the hearing transcript and finds no withdrawal of the objection either directly or by implication.
 
 
 31
 In this case, failure to provide Dr. Sullivan's report in a timely fashion so prejudiced Claimant's case as to warrant reversal.
 
 
 32
 Accordingly, denial of the award is REVERSED in favor of an award.
 
 
 
 *
 The Honorable Timothy D. Leonard, United States District Judge for the Western District of Oklahoma, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The Court's reference to the Black Lung Benefits Act includes Title IV of the Federal Mine Safety and Health Act of 1977, as amended by the Black Lung Benefits Reform Act of 1977, the Black Lung Benefits Revenue Act of 1977, the Black Lung Benefits Revenue Act of 1981 and the Black Lung Benefits Amendments of 1981, all of which provide for the payment of benefits to a coal miner who is totally disabled due to pneumoconiosis and to certain survivors of a miner who dies due to pneumoconiosis
 
 
 [2]
 Dr. Sullivan's report and testimony from the report provided the basis for denial of the claim. Dr. Sullivan stated categorically that Mr. Johnson's symptoms were not caused by Black Lung disease